## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| TRACY MORTON, on behalf of Herself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:13-CV-01012 |
| v. | ) ) | Judge Campbell |
| | ) | Magistrate Judge Griffin |
| THE VANDERBILT UNIVERSITY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER THE PROVISIONS OF RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

### I. Statement of the Case

This action was brought by the Plaintiff, Tracy Morton ("Plaintiff"), a former employee of the Defendant, The Vanderbilt University ("Defendant" or "Vanderbilt" or the "University") in its Medical Center, on behalf of herself and all other similarly situated employees under the provisions of the Worker Adjustment and Retraining Notification Act ("WARN" or the "Act"), 29 U.S.C. §§2101, *et seq*. As set forth in the original Complaint, Plaintiff seeks to require Vanderbilt to provide the 60-day notice required by WARN to employees laid off in a separate employment action less than 90 days prior to the date when more than 500 employees were informed of an impending "mass layoff," but more than 90 days from the date that those employees will actually be laid off and their employment terminated. Plaintiff's complaint should be dismissed because well-established law provides that the operative date for purposes of WARN is the date of "employment loss," rather than the date that employees are informed of a termination of employment which will occur at a future date.

The Plaintiff contended in her original Complaint that she and other Vanderbilt employees were terminated in July, 2013 as part of an overall reduction in force implemented by

the Medical Center, which, taken together, constituted a "mass layoff" within the meaning of 29 U.S.C. §2101(a)(3). The Plaintiff asserts that although the number of employees terminated by the Defendant in July, 2013 did not rise to the level required to constitute a "mass layoff" under WARN, when those "employment losses" are combined with over 1,000 layoffs of employees in its Medical Center announced by the University on September 17, 2013, to be effective on and after November 16, 2013, they do constitute a "mass layoff" so that the employees terminated in July – within 90 days of September 17 - should have been provided with the 60-day notice required by WARN. The Defendant filed a Motion to Dismiss the Complaint under Fed.R.Civ.P. 12(b)(6), asserting that based on the allegations in the Complaint, Plaintiff failed to state a claim against Vanderbilt under WARN.

Prior to the date for the Plaintiff's response to the Defendant's Motion to Dismiss, the Plaintiff filed her First Amended Complaint ("Amended Complaint") which added some revised allegations regarding the effect of the notices given to employees on September 17, which the Plaintiff characterizes as "terminations" for purposes of determining whether a mass layoff which should include the Plaintiff and others terminated in July took place on that date. (Doc. No. 12). Based on that Amended Complaint, the Court denied the Defendant's Motion to Dismiss as "moot." (Doc. No. 14).

Vanderbilt has filed herewith a revised Rule 12(b)(6) Motion asserting that the additional allegations contained in the Amended Complaint still fail to state a claim against it under WARN upon which relief can be granted because the proper period for aggregation of the total number of layoffs starts on the date of <u>actual</u> <u>employment</u> <u>loss</u> for the additional 1,000 plus employees -- November 16 -- rather than September 17, the date those employees were notified of that their employment would end on November 16, and that any actions by Vanderbilt in connection with those notices which are alleged to have occurred do not convert the <u>notice</u> of termination at a future date into <u>terminations</u>, or "employment losses," on that date. Accordingly, the Amended Complaint should be dismissed in its entirety.

## II.  Plaintiff's Factual Allegations

The Plaintiff asserts that she was one of approximately "300 to 500 employees" but "slightly under 500 employees" of the Vanderbilt University Medical Center ("VUMC") who were terminated by the VUMC from July 1 through some unspecified date in July, 2013. Attached to the original Complaint as Exhibit A is the letter dated July 1, 2013, notifying Ms. Morton of her termination based on her individual employee performance.[1] The Amended Complaint alleges that "according to various media outlets and other sources, during a short period of time beginning on July 1, 2013, VUMC laid off between 300 to 500 workers." (Amended Complaint ¶ 11).[2] The Amended Complaint alleges that those employees were "laid off approximately 78 days" prior to September 17, 2013, when the University notified the Director of the Dislocated Worker Unit of the Tennessee Department of Labor and Workforce Development (the "Notice") of the impending layoff of approximately 1,033 employees in the VUMC.  (Amended Complaint ¶¶12, 20). A copy of that letter is attached to the original Complaint as Exhibit B. That letter states that the employees whose jobs are being eliminated will be terminated "beginning on November 16, 2013" and continuing for either "14 days thereafter," or "until December 31, 2013." All such employees were provided the 60 day written notice required by WARN and will remain employees of Vanderbilt with full pay and benefits through November 16, 2013, although they are not required to report to work.

The Amended Complaint adds new allegations regarding the action taken by the Defendant Vanderbilt on or about September 17, 2013 in an effort to bolster the Plaintiff's contention that employees who were underlined notified by Vanderbilt that their jobs would be eliminated in

---

[1]        There are no exhibits to the Amended Complaint.
[2]        The actual number was less than 300, but for purposes of this Motion, Vanderbilt will accept the allegation that fewer than 500 employees were terminated between July 1 and November 16 as part of the reduction in force for financial reasons.

sixty (60) days, or on November 16, 2013, were actually <u>terminated</u> on that date. The Amended Complaint alleges that Vanderbilt "immediately informed [employees] that their services would no longer be required and that they were not required to report to work." (Amended Complaint ¶3). The Amended Complaint further alleges that Vanderbilt "encouraged these employees to seek other employment during this time." (*Id.*).

The Amended Complaint alleges that "according to local media, Vanderbilt confirmed that it terminated at least 275 employees during the week of September 17, 2013." (¶14).[3] The Amended Complaint alleges that those individuals were informed that "their services were no longer needed and that [they] were no longer required to return to work." (¶15). The Amended Complaint further alleges that after notifying such individuals of the "termination," ". . . Vanderbilt immediately escorted them back to their work areas to remove their personal items" (¶16) and "immediately escorted them off the premises" having provided "pre-paid taxicabs to facilitate removing the terminated employees from Vanderbilt's campus." (¶17). The Amended Complaint further alleges that Vanderbilt "attempted to characterize the September 17 terminations as mere notices of termination, . . ." in order to "evade its obligations under the WARN Act . . . ." (¶29). Finally, the Amended Complaint alleges that based on the asserted "terminations" which took place on or about September 17 of "at least 275 employees, resulting in employment losses" as defined in 29 U.S.C. §2101(a)(6), Vanderbilt terminated "at least 500 employees" beginning on or about July 1, 2013 so that all employees who may have been terminated between July 1 and September 17 were entitled to the sixty (60) day notice required by the WARN Act. (Amended Complaint ¶¶40-42).

---

[3]     Paragraph 2 of the Amended Complaint alleges that "During the week of September 17, 2013, Vanderbilt <u>gave notice</u> to at least 275 more employees, pursuant to the WARN Act, of the permanent elimination of their jobs."

## III.  Applicable Legal Authorities

A.      Standard for a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil
        Procedure.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Although matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," documents attached " . . . 'to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" (*Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1997), quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

All well-pleaded allegations of the complaint must be read as true. *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). The plaintiff's factual allegations are regarded as true and, if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then dismissal is proper.   (*Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996), quoting *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990)). A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. (*Allard v. Weitzman (In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993)).

Though the *Twombly* and *Iqbal* decisions raised the bar regarding the substantive allegations which must be pleaded in a complaint to withstand a 12(b)(6) motion to dismiss, those decisions did not alter the bases upon which those facts may be asserted. In *Arista Records LLC v. Doe*, the appellant argued the appellees were required under *Twombly* to plead facts in their Complaint based on personal knowledge. (*Arista*, 604 F.3d at 114, 119). The court held the

5

*Twombly* decision did not prevent the plaintiff from pleading facts on information and belief, but simply required "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." (*Arista*, 604 F.3d at 120). Similarly, in *Lilley v. Wells Fargo, N.A.*, the court wrote that pleading upon information and belief "was not abolished by *Twombly* or *Iqbal*." (No. 10-81078C-13D, 2011 Bankr. LEXIS 1406) (copy attached). The *Lilley* court discussed the difference between conclusory assertions and facts properly pleaded upon information and belief. Conclusory allegations couch legal conclusions as fact whereas facts are properly pleaded upon information and belief when a plaintiff lacks personal knowledge of those facts. (*Lilley*, No. 10-81078C-13D, 2011 Bankr. LEXIS 1406).

In *Veasy v. Teach for America, Inc.*, 868 F.Supp. 2d 688 (M.D. Tenn. 2012), Judge Trauger assessed the sufficiency of the plaintiff's allegations of racial and age discrimination in light of the heightened level of pleading required by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court found Plaintiff's factual allegations in support of his racial discrimination claim to be lacking. Veasey made several conclusory allegations regarding the race of the other applicants that were contradicted by other facts within his own pleading, and failed to plead discriminatory animus on the part of the defendant. (*Id.* at 696). The failings of his factual allegations were not that they were premised on information and belief but that they were "broad and conclusory allegations of racial discrimination" and "entirely subjective as alleged." (*Id.*).

In assessing the plaintiff's ADEA claim, Judge Trauger also considered the foundation of the facts asserted. The Court found that plaintiff's allegations required the court to make "unreasonable inferential leaps" to move from the facts he alleged to finding the factual basis for his claim of age discrimination. The Court also considered the particulars of the factual

allegations. The Court noted that Plaintiff included several inflammatory statements in support of his age claim, but failed to provide specific details as to the source of those statements, the speaker's association with the defendant, and the context of those statements. (*Id*. at 697). *See also, Leapers, Inc. v. First Quality Distribs., Inc.,* No. 11-15058, 2012 U.S. Dist. LEXIS 67650 (E.D. Mich. May 15, 2012) (copy attached). Finding that plaintiff's allegations did not meet the "facially plausible" standard and required the Court to make "unreasonable inferential leaps," the court concluded that such statements could not be attributed to the defendant without more specific information and dismissed the Complaint. (*Id.*).

The additional allegations added in Plaintiff's Amended Complaint are subject to the same shortcomings. Plaintiff alleges that her employment was terminated by Vanderbilt on July 1, 2013. She offers no basis on which she could have any knowledge of the circumstances surrounding the notice given by Vanderbilt to other employees on September 17, 2013. Plaintiff's allegations do not specify the source of her purported knowledge of what employees who received notice of their future layoff on September 17 were told, or as to their actual employment status after that date. Similarly, there is no suggestion how Plaintiff could have any knowledge as to the number of employees affected or their status as employees after September 17, 2013 since she was no longer a Vanderbilt employee after July 1. Such allegations are clearly based on sheer speculation or information which Plaintiff's attorneys purport to have gathered from unspecified sources.

B.     Applicable Provisions of the WARN Act.

Even if the Court accepts the allegations in the Amended Complaint as sufficiently pleaded, Plaintiff's claim still fails as a matter of law. There is no dispute that Vanderbilt is an "employer" within the meaning of the Act, 29 U.S.C. § 2101(a)(1). The Amended Complaint alleges that Vanderbilt implemented a "mass layoff" as defined in 29 U.S.C. § 2101(a)(3) when

7

it began laying off employees on or about July 1, 2013. (¶ 41). Those layoffs are alleged to have constituted "employment losses," as defined in 29 U.S.C. § 2101(a)(6), during the 90-day period beginning on or about July 1, 2013 and continuing with the notification of additional layoffs given on September 17, 2013. (¶¶ 40, 41). The Amended Complaint alleges that no notice, as required by the WARN Act, was given to any "affected employee" terminated within the 90 days prior to September 17, 2013, nor was notice provided by Vanderbilt to the Tennessee Department of Labor and Workforce Development or the chief elected official of local government in Nashville where the University is located. (¶ 43). The Amended Complaint alleges that such failure constitutes a violation of WARN (¶ 44), and that Vanderbilt did not act in good faith since it had "no reasonable grounds for believing that the mass layoff was not in violation of the notice requirements at 29 U.S.C. § 2102." (¶ 47). Vanderbilt asserts that the proper period for calculating the 90 days during which the total number of employment losses should be "aggregated" is the period prior to November 16, 2013 – not the period beginning on September 17.

For purposes of the Act, a "mass layoff" is defined as a reduction in force which (A) is not the result of a plant closing; and (B) results in an employment loss at a single site of employment during any thirty day period (i) for at least 33% of the employees (excluding any part-time employees), and (ii) at least 50 employees (excluding any part-time employees), or at least 500 employees (excluding any part-time employees). 29 U.S.C. § 2101(a)(3).

An "employment loss" is defined as (a) an employment termination, other than a discharge for cause, voluntary departure or retirement; (b) a layoff exceeding six months; or (c) a reduction in hours of work of more than 50% during each month of any 6-month period.[4] 29

---

[4]    Exceptions to the definition of "employment loss" associated with the sale, relocation or consolidation of part or all of the employer's business is set forth in 29 U.S.C. § 2101(b), but is not relevant here.

U.S.C. § 2101(a)(6). "Employment loss" does not include the <u>notification</u> of a future termination or layoff under the provisions of the Act.

C.      The New Allegations Contained in the Amended Complaint Do Not Strengthen Plaintiff's Claim Under WARN.

For the purposes of this Motion, there is no dispute that Vanderbilt is laying off more than 500 employees within the 90-day period immediately preceding November 16, 2013 so that it will have engaged in a "mass layoff" starting 90 days prior to that date. Based on the allegations in the Amended Complaint, however, fewer than 500 employees were laid off or terminated by Vanderbilt between July 1 and September 17, 2013, unless the provision of those notices of layoffs to be effective on November 16 is treated as the actual <u>termination</u> or <u>employment loss</u> for those employees who received notice on that date. The Amended Complaint does not allege, and, in fact, no employees were laid off or terminated as part of the reduction in force between September 17 and November 16 – the end of the 60-day WARN Act notice period which began on September 17.

In a tacit admission that the issue raised by Vanderbilt in its Motion to Dismiss filed with regard to the original Complaint should be decided against her claim, Plaintiff has attempted to make new allegations (none of which the Plaintiff would have personal knowledge of) to support the contention that employees who indisputably were <u>notified</u> of their impending layoffs to be effective on November 16, 2013, were actually <u>terminated</u> on September 17 in spite of the fact that they remained on Vanderbilt's payroll, and continued to receive regular pay checks and be covered under Vanderbilt's employee benefits after that date.

29 U.S.C. § 2102(d) provides that:

> . . . in determining whether a mass layoff has occurred, or will occur, employment losses for two or more groups at a single site of employment, each of which is less than the minimum number of employees specified in §2101(a)(2) or (3) of this title, but which <u>in the aggregate</u> exceed that

9

minimum number, <u>and which occur within any 90-day period</u> shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter. (emphasis added).

For purposes of this motion, Vanderbilt does not contend that terminations which were implemented in July, 2013 are "separate and distinct" from the layoffs announced on September 17, 2013 and implemented beginning November 16, 2013, but those terminations are clearly outside of the proper 90-day aggregation period applicable to the layoffs which will be effective on November 16, 2013.

The issue raised by Ms. Morton's original and Amended Complaints is the beginning date for the 90-day period to be considered in determining which employees are affected by the mass layoff implemented by Vanderbilt to be effective on November 16, 2013. The Plaintiff asserts that that period begins on September 17 when the notice of the mass layoff required by WARN was given by Vanderbilt to state and local officials, and to affected employees of the <u>actual</u> layoff which would take place on, and after, November 16. Vanderbilt asserts that under the clear language of the statute and the regulations, the proper date of the "employment loss" is November 16, so that the Plaintiff and those she seeks to represent, were not part of the "mass layoff" and, therefore were not entitled to the 60-day notice required by WARN.

Under the regulations adopted by the Department of Labor in April, 1989, 29 CFR Part 639, the general rule for calculating that 90-day period is explained as follows:

§639.5 When must notice be given?
   (a) *General rule.*
   (1)  With certain exceptions discussed in paragraphs (b), (c) and (d) of this section and in §639.9 of this part, notice must be given at least 60 calendar days prior to any planned plant closing or mass layoff, as defined in these regulations. <u>When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30-day or 90-day period triggers the 60-day notice requirement. A worker's last</u>

day of employment is considered the date of that worker's layoff. The first
and each subsequent group of terminees are entitled to a full 60 days'
notice. In order for an employer to decide whether issuing notice is
required, the employer should –

   (i)  Look ahead 30 days and behind 30 days to determine whether
employment actions both taken and planned will, in the aggregate for
any 30-day period, reach the minimum numbers for a plant closing or
a mass layoff and thus trigger the notice requirement; and

   (ii)  Look ahead 90 days and behind 90 days to determine whether
employment actions both taken and planned each of which separately
is not of sufficient size to trigger WARN coverage will, in the
aggregate for any 90-day period, reach the minimum numbers for a
plant closing or a mass layoff and thus trigger the notice requirement.
An employer is not, however, required under §3(d) to give notice if the
employer demonstrates that the separate employment losses are the
result of separate and distinct actions and causes, and are not an
attempt to evade the requirements of WARN. (Emphasis added).

The referenced "30-day period" is the period set forth in 29 U.S.C. § 2101(a)(3)(B) for

determining whether the requisite number of employees has been laid off as part of one

employment action. The "90-day period" is the period set forth in 29 U.S.C. §2102(d) for

determining whether "employment losses for 2 or more groups at a single site of employment,

each of which is less than the minimum number of employees specified in §2101(a)(3) . . . but

which in the aggregate exceed that minimum number, and which occur within any 90-day period

shall be considered to be a . . . mass layoff . . . ." Section 639.5(a)(1) specifically provides that "a

worker's last day of employment is considered the date of that worker's layoff." Utilizing the

date of the first layoff or "employment loss" of an actual or planned layoff, the Regulations

require that an employer "look ahead 90 days and behind 90 days to determine whether

employment actions both taken and planned each of which separately is not of sufficient size to

trigger WARN coverage will, in the aggregate for any 90-day period, reach the minimum

number for a plant closing or a mass layoff and thus trigger the notice requirement." The "trigger

date" is the date of the actual "employment loss," not the date of the required 60-day notice.

The termination date for the first of the approximately 1,000 employees to be laid off by Vanderbilt, which Plaintiff concedes is necessary to bring the total employment losses within a 90-day period to the number required for a "mass layoff" under WARN, is **November 16, 2013**, and, accordingly, that date is the proper date for the commencement of the 90-day "look back period."[5] Ninety days prior to November 16 is August 19, 2013.[6] As alleged in the Amended Complaint, those employees in the so-called "first round" were terminated beginning July 1 through some unspecified date in July, 2013 and involved under 500 employees. (Amended Complaint ¶¶ 9, 13, 14, 15, 20, 27 and 28). Although the Amended Complaint alleges that the mass layoff began on or about July 1, 2013, and ". . . was continuing as of the filing of this Complaint," (Amended Complaint ¶ 44), the Amended Complaint alleges that the provision of the 60-day notice required by WARN on September 17, 2013 to those employees whose employment will end on November 16, 2013 as specified in the Notice was in effect the termination date for those employees.

In "WARN: Employer's Guide to Advance Notice of Closings and Layoffs" issued by the Department of Labor's Employment and Training Administration ("ETA"), there is a specific discussion of "Calculating the Timeframe to Determine when WARN Notice is Required." (Guide at p. 10) (Copy attached as Appendix A). The Guide provides an example as to how to apply the "90-day aggregation" requirement of the Act and regulations.[7] In the example, the requisite number of layoffs is reached on day 90 when the final five employees are terminated. As spelled out in the example given, the WARN notice obligation is triggered by the

---

[5] The Amended Complaint raises no issue regarding employees who will be terminated within 90 days following November 16, 2013, nor could it as Vanderbilt intends to provide notice to such employees just like it provided notice to the employees who will be laid off effective November 16.

[6] The Complaint refers to a 78-day period beginning on September 17, 2013, the date of the University's letter to the State Dislocated Worker Unit. (¶ 20).

[7] The same example is utilized in the Preamble to the Regulations.

12

"termination" of the number of employees required to constitute a "mass layoff" and once triggered the "notice" requirement is retroactive to "all employees terminated within the 90 days . . . prior to that date."

In *Oil Chemical and Atomic Workers' Union Local 7-629 v. RMI Titanium Company*, 199 F.3d 881 (6th Cir. 2000), the Sixth Circuit Court of Appeals addressed a claim under WARN similar to that being advanced by the plaintiffs in this case. In that case, RMI had a series of layoffs of both unionized and non-unionized salaried employees working at its Metals Plant. After analyzing the series of layoffs and the total number of employees affected the Court considered when there was an actual loss of employment through the several temporary reductions in force for WARN purposes. Based on its analysis, the Court agreed with the District Court's decision that those "layoffs" should not be added to the other permanent layoffs to create a "mass layoff triggering WARN liability." The Court concluded:

> Nevertheless, RMI has won the numbers game these parties ultimately played. We agree with the District Court that there is no genuine issue of material fact that RMI <u>terminated</u> 87 employees within the 90-day period beginning July 22, 1991 <u>and that only these layoffs may be counted toward triggering the 33% threshold for purposes of WARN's advance notification provision</u>. As a matter of law, then, the aggregated layoffs did not count as a mass layoff under WARN for which affected employees must be notified. 199 F.3d at 886. (Emphasis added).

In reaching its decision, the Court utilized the dates of the actual layoffs to calculate whether the threshold number had been met.

Similarly, in this case, the date which "triggers" the WARN notice requirement for Vanderbilt – when the number of employees laid off will exceed 500, is November 16, 2013. The 90-day "look back" provision is triggered on that date so that any employees laid off within the 90 days prior to that date should also have received notice or pay in lieu of notice. Since the Plaintiff and any other employees she seeks to represent were terminated more than 90 days prior

to November 16, 2013, they were not included in the "mass layoff" and have no claim under WARN.

Plaintiff's contention that the provision of the required sixty (60) days' advance notice of termination to those employees who will be laid off effective on and after November 16, 2013 equates to their termination is absurd. Plaintiff alleges in her Amended Complaint that the fact that employees given such notice were relieved of their duties and that some may have been actually escorted out of Defendant's facility and provided with transportation in order to leave the premises converts the "notifications" to "terminations." Had Vanderbilt chosen to allow those employees to continue to work until November 16, 2013 after receiving the notices on September 17, clearly, Plaintiff would have no argument that those employees' loss of employment occurred on November 16 – not September 17. The fact that Vanderbilt chose to relieve those employees of their duties and continue to pay them on their regular pay dates and provide coverage for those employees under its employee benefits policies does not alter the legal effect that those employees were not, in fact, terminated until the end of the 60-day notice period. The fact that Vanderbilt encouraged them to use the 60 days' advance notice period to seek other employment is entirely consistent with the purpose for providing the WARN notice, i.e. to give employees scheduled to be laid off the opportunity to arrange for other employment during or after the notice period.  Accordingly, the mass layoff which will take place on November 16 will occur more than 90 days after the Plaintiff or any other employees were terminated in July, and the Amended Complaint should be dismissed.

D.     The Court Should Alternatively Limit Discovery and Resolve the Issue as to Whether the September 17, 2013 Notices Constituted "Terminations" or "Employment Losses."

Even if the Court should find that Plaintiff has "cured" any deficiencies in the original Complaint as to the necessity that employees notified of their impending layoffs on September

14

17, 2013 were actually "terminated" or suffered "employment losses" within the meaning of the WARN Act, to avoid dismissal under Rule 12(b)(6), the Court should limit the initial stage of discovery to enable the parties to present to the Court the legal issue of whether sufficient "terminations" occurred within ninety (90) days of July, 2013 to trigger the obligation to provide the sixty (60) day notice of layoff required by WARN to employees terminated in that earlier time frame. The Court should make that determination before considering any motion to certify the purported class which Plaintiff seeks to represent under Rule 23 of the Federal Rules of Civil Procedure. If, as the Defendant contends, the Court concludes that providing notice of a layoff to occur at a future date is not, in fact, a termination or loss of employment, Plaintiff has no claim under WARN and this case should be dismissed. Staying further discovery and determining that issue at an early stage of the case will save the parties extensive time and costs.

## IV. Conclusion

Based on the allegations contained in the Amended Complaint, Plaintiff has not stated a claim under the WARN Act, either on her own behalf, or on behalf of any of the other employees whom she purports to represent under the provisions of Rule 23 of the Federal Rules of Civil Procedure, and the Amended Complaint should be dismissed in its entirety. Alternatively, the Court should direct that initial discovery be conducted only on the issue as to whether the notification of employees by Vanderbilt on September 17, 2013 constituted termination of those employees, or "employment losses" so as to extend the WARN notification to employees terminated in July.

Dated this 1st day of November, 2013.

Respectfully submitted,

s/ William N. Ozier
William N. Ozier (BPR# 003409)
Michael S. Moschel (BPR # 016826)
150 Third Avenue South, Suite 2800
Nashville, Tennessee  37201
Phone: (615) 742-6200
Facsimile: (615) 742-2732
bozier@bassberry.com
mmoschel@bassberry.com

John C. Callison (BPR# 3546)
Senior Deputy General Counsel
2100 West End Avenue
Suite 750
Nashville, TN 37203
Phone: (615) 322-8613
Facsimile: (615) 343-0488
john.callison@vanderbilt.edu

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished via the Court's electronic filing system to the following, on this 1st day of November, 2013:

George Edward Barrett
Jerry E. Martin
David W. Garrison
Scott P. Tift
BARRETT JOHNSTON LLC
217 Second Avenue, N
Nashville, TN 37201

s/ William N. Ozier
William N. Ozier

12514512.1