UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACY MORTON, on behalf of Herself ) <br> and All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> THE VANDERBILT UNIVERSITY, ) <br> ) <br> Defendant. ) | No. 3:13-01012 <br> Judge Sharp |

## MEMORANDUM

In this action under the Worker Adjustment and Restraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, Magistrate Judge Griffin has entered a Report and Recommendation in which she recommends that: (1) Defendant Vanderbilt University's Motion to Dismiss Plaintiff's First Amended Complaint be denied and (2) Plaintiff Tracy Morton's Motion for Class Certification be granted. Defendant has filed Objections to the R & R (Docket No. 52), to which Plaintiff responded (Docket No. 53), and Defendant has replied (Docket No. 56). For the reason that follow, Magistrate Judge Griffin's recommended disposition will be accepted and approved.

### I. FACTUAL ALLEGATIONS

The relevant factual allegations in the operative First Amended Complaint are as follows:

On July 1, 2013, Plaintiff and some 300 to 500 other employees of the Vanderbilt University Medical Center ("VUMC") were informed that their employment was terminated immediately. Managers tasked with informing the employees were told that, due to the Affordable Care Act, declining reimbursements, and other economic factors, it was necessary for VUMC to terminate

1

numerous employees.

When she was told of her termination, Plaintiff was provided a letter that, among other things, stated:

> As the Medical Center's operations continue to evolve to meet significant challenges facing the health care industry, our workforce must be fully engaged to meet all performance expectations. This need, in combination with financial challenges we face, has resulted in a review of individual employee performance. This letter is documentation of our conversation today, during which I notified you that your employment with Vanderbilt University and Medical Center is ending, effective immediately.

(Docket No. 12, First Amended Complaint 10). The other terminated employees received substantially the same letter.

On September 17, 2013, Defendant wrote to the Tennessee Department of Labor and Workforce Development's Dislocated Worker Unit about its plans to permanently lay off more than 1,000 VUMC workers:

> Vanderbilt University is facing many challenges related to changes in the health care industry. Due to reductions in health care and research funding by the government and other payors, Vanderbilt has reviewed its structures and business needs and has determined that positions will be eliminated. In compliance with the requirements of the Workers Adjustment and Retraining Notification ("WARN") Act, Vanderbilt University is providing you with the following notification.
>
> Approximately 1,033 Vanderbilt employees at its locations in Davidson County (primarily at the Vanderbilt University Medical Center main campus and One Hundred Oaks) and Williamson County (such as, the Williamson County Multispeciality Clinics located on Edwards Curd Lane in Franklin) will be permanently laid off starting on November 16, 2013 (60 days following the receipt of this letter) and continuing until December 31, 2013. All employees affected by these layoffs will be provided 60-days written notice prior to the effective date of their expected layoff.

(Id. ¶ 12).

At the same time as the letter to the Department of Labor, VUMC started informing the

additional employees of their termination, and approximately 275 employees were informed of their termination during the week of September 17, 2013. However, and unlike with the July 2013 employees, Defendant acknowledged it obligations under the WARN Act.

The employees in the September 2013 group were informed that their services were no longer required and that they were no longer required to return to work. In fact, once notified, the employees were escorted to their work areas to remove personal belongings and then either escorted off the premises or placed in prepaid taxicabs for the ride home. The employees were encouraged to actively seek other employment.

Plaintiff specifically alleges that "Vanderbilt terminated these individuals on September 17, 2013, effective immediately, while paying them 60 days front pay to avoid WARN Act liability." (Id. ¶ 19). In contrast, the initial 300 to 500 employees who were terminated beginning on July 1, 2013 did not receive 60 days notice or front pay. Further, even though the termination letters given the July 2013 group of terminated employees referenced "performance" as part of the basis for the terminations, this was "merely a ruse designed by Defendant to intentionally avoid the WARN Act's obligations and requirements." (Id. ¶ 21).

Plaintiff further alleges that the financial pressures which led to both sets of terminations "were well known to VUMC management prior to July of 2013." (Id. ¶ 22). In fact, the Medical Center had implemented a system-wide hiring freeze and eliminated employees' ability to accrue vacation time beginning in April 2013. In late spring or early summer (but before the first wave of cuts) Defendant began planning a multi-phase reduction in force. Human Resource Managers met and determined that the first round of terminations would begin on or about July 1, 2013, followed by another round on or about July 22, 2013, and concluding with the largest round in mid-September

3

2013.

Plaintiff asserts that Vanderbilt willfully and intentionally crafted the rounds of mass terminations to evade the requirements and liability imposed by the WARN Act. Plaintiff seeks to represent a class of "[a]ll employees of Defendant who were terminated or forced into retirement by the threat of termination between on or about July 1, 2013, and on or about September 17, 2013, without receiving the required 60-days' notice under the WARN Act." She makes no claim on behalf of those employees who were terminated in the wave beginning on September 17, 2013 and who received 60-days pay.

## II. R & R AND DEFENDANT'S OBJECTIONS

Under the WARN Act, an employer of 100 or more employees is generally required to provide at least 60 days written notice to affected employees before a mass layoff may occur. 29 U.S.C. § 2102(a)(1). A "mass layoff" includes a reduction in force, which is not the result of a plant closing, that results in an employment loss at a single site of employment during any 30-day period and involves at least 500 full-time employees. 29 U.S.C. § 2101(a)(3). The Act also contains an aggregation provision that allows separate layoffs to be counted together for purposes of the 500 employee threshold by providing:

> in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

29 U.S.C. § 2102(d).

After surveying this law and noting that Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and

4

Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555 (2007) do not require that a complaint contain detailed factual allegations, but do require that a complaint contain enough factual allegations to show a plausible right to relief, Magistrate Judge Griffin found the Amended Complaint sufficiently pled. She wrote:

> The Plaintiff's allegation that 275 VUMC employees were terminated from their employment within 90 days of the termination of several hundred other VUMC employees, including herself, is sufficient at this stage of the proceedings, to assert a plausible WARN Act claim based upon aggregation under Section 2102(d). The issue before the Court is not whether Plaintiff can ultimately prevail on this theory, which is an issue for summary judgment or trial, but whether she has met the plausibility threshold necessary to defeat a motion to dismiss. The Plaintiff meets that threshold.

(Docket No. 49 at 8).

In so ruling, Magistrate Judge Griffin rejected as premature Defendant's argument, based on paragraphs 12 and 19 of the Amended Complaint, that the employment loss for the second group of employees occurred on November 16, 2013, because Vanderbilt continued the employee's benefits, paid them through that date, and did not provide them "front pay in any sort of lump sum" or provide them with "pay in lieu of notice." (Id. at 9). She wrote:

> . . . Neither paragraphs 12 or 19 of the First Amended Complaint, nor Exhibit B thereto, actually set out the specific facts asserted by the Defendant in its supporting memorandum of law. The only allegations made by the Plaintiff in her First Amended Complaint are that the September 17 employees were paid "60 days of front pay." The Defendant actually asks the Court to make a ruling as a matter of law based upon facts that are not actually pled. While the Defendant's assertion of the factual trappings surrounding what occurred with respect to the September 17 employees may well be ultimately shown to be accurate, the Court cannot rely on those facts in the context of ruling on a Rule 12(b)(6) motion to dismiss. The WARN Act does not provide a definition of an employment loss that clearly controls every possible factual scenario raised by the instant action, and it is not prudent to make a ruling as a matter of law as to whether the employment loss at issue occurred on September 17, 2013 or November 16, 2013, without a developed record of facts. Given the gravity of the legal issues presented by the instant action, the Court will not make legal ruling on what is, as of this moment, a hypothetical situation.

5

(Id. at 9).

The Court agrees with Magistrate Judge Griffin's reading of the Amended Complaint and her ultimate conclusion that it states a plausible WARN Act claim. The Court also rejects Defendant's Objections to the R & R.

Initially asserted in its "Statement of Facts" section and carried over into its "Argument" section, Defendant first argues that "the only fact in the record regarding the date Vanderbilt permanently laid off the additional 275 employees" is November 16, 2013. (Docket No. 52 at 4). This supposed "fact" is based upon the statement in paragraph 2 of the Amended Complaint that "[d]uring the week of September 17, 2013, Vanderbilt gave notice to at least 275 more employees, pursuant to the WARN Act of the permanent elimination of their jobs." (Id. at 3). It is also based upon the September 13, 2013 letter to the Tennessee Department of Labor which stated that (1) "[a]pproximately 1033 Vanderbilt employees . . . will be permanently laid off starting November 16, 2013 (60 days following receipt of this letter) and continuing until December 31, 2013;(2) [a]ll employees affected by these layoffs will be provided 60-days written notice prior to the effective date of the expected layoff; and (3) "[a] list of job classification and the number of employees currently holding the jobs which will be eliminated beginning on November 16, 2013 . . . is available at Vanderbilt's Human Resources Department. . .". (Id. at 4).

The foregoing language, with the emphasis supplied by Defendant, does not establish as a *fact* that the date for the second wave of layoffs was November 16, 2013. The allegation in the Amended Complaint is just that, an allegation. Even so, just because notice was given on September 17, 2013, hardly means that the permanent elimination of the jobs occurred two months later. To the contrary, the specific allegation is that "Vanderbilt terminated these individuals on September

6

17, 2013, effective immediately, while paying them 60 days front pay to avoid WARN Act liability." Whether this is true, that is, whether this is a *fact*, remains to be seen. See, Bledsoe v. Emery Worldwide Airlines, Inc., 635 F.3d 836, 846-47 (6th Cir. 2011) (for purposes of WARN Act notice "affected employees" do not include employees who have a reasonable expectation of recall, but this is an objective inquiry requiring a court to consider several criteria).

The only *fact* that can be derived from the letter to the Tennessee Department of Labor is that a letter was sent setting forth Vanderbilt's position. No matter how many times the letter may have stated that the effective date of the layoff was November 13, 2013, this does not make it a fact. See, Wiltz v. M/G Trans. Servs., Inc., 128 F.3d 957, 964 (6th Cir. 1997) (collecting cases) ("Courts addressing § 2101(a)(6), whether in the context of a sale, plant closing, or mass layoff, have all applied a 'practical, effects-driven analysis of whether a break in employment actually occurred' to trigger the notification requirements of the WARN Act'"); Phason v. Meridian Rail Corp., 479 F.3d 527, 531 (7th Cir. 2007) ("instead of looking at employers' intent, the [WARN Act] examines consequences"). And, it does not answer the ultimate question of whether the second round of lay-off can be aggregated with the first.

Defendant next finds it "interesting" that Magistrate Judge Griffin "did not mention any of the legal authorities cited by Vanderbilt to support it Motion," even though "[t]hose authorities clearly establish that providing the 60-day WARN notice and not requiring employees to work through the notice period does not constitute the discharge of the affected employees." (Docket No. 52 at 8). Defendant then discusses Long v. Dunlop Sports Group of Americas, Inc., 506 F.3d 299 (4th Cir. 2008) in detail. That case is not controlling, was decided on a motion for summary judgment (as Magistrate Judge Griffin noted), and is, in any event, inapposite.

7

The essence of the dispute before the Fourth Circuit in Long is contained in the opinion's opening paragraph:

> . . . In this case, a covered employer ceased all production at its golf ball manufacturing plant without prior notice of the shutdown. The employer, however, provided notice of the shutdown at the time of shutdown and for the next 60 days continued to pay full wages and benefits to all but twenty-two employees. The employer stopped payments to those twenty-two employees when they began full-time employment with another employer. Those employees bring this suit, asserting that the employer violated the WARN Act and should pay their wages and benefits for the entire 60–day notice period. We hold that the employer did not violate the WARN Act because no employee suffered an employment loss as a result of the plant shutdown until 60 days after the employer provided notice of it.

Id. at 300. After reciting the agreed relevant facts, the Fourth Circuit set forth two key holdings.

First, "the date of plant shutdown . . . need not coincide with the date of the employment loss, and the WARN Act's required notice must precede the date when the employment loss resulting from the shutdown occurs, not the date when the shutdown itself occurs." Id. at 302. Second, "'employment termination' is a 'permanent cessation of the employment relationship'" and "[w]hen an employer commits to continue payment of wages and benefits to its employees, the employment relationship has not ended." Id at 303 (citation omitted). "Thus, Long stands only for the proposition that where an employer 'continues to pay its employees full wages and benefits[,]' the employees do not face an unanticipated 'employment loss' under the WARN Act until the cessation of such wages and benefits." Gray v. Walt Disney Co., 915 F. Supp.2d 725, 730 (D. Md. 2013)(quoting Long, 506 F.3d at 302).

Defendant's reliance on Long might have some purchase if Plaintiff was attempting to assert a damages claim on behalf of those employees who were terminated during the second wave of layoffs. She does not. Rather, the essence of her claim is that Defendant "manipulat[ed] [the] layoff time-frames to game the system and avoid WARN Act coverage when conducting mass layoffs."

8

(Docket No. 53 at 10). Long's concern was not about the aggregation rule and it simply did not address the present scenario.

Ultimately, the Court's concern is with whether Plaintiff has stated a plausible claim. As Magistrate Judge Griffin noted, "Plaintiff has alleged that the Defendant contemplated making significant reductions during 2013, and should have provided notice to the individuals it summarily dismissed in July 2013, which would have been consistent with the WARN Act's requirement that employers look ahead 90 days when contemplating a sizeable reduction in force." (Docket No. 49 at 4-5). Specifically, the regulations counsel employers to "[l]ook ahead 90 days and behind 90 days to determine whether employment actions both taken and planned each of which separately is not of sufficient size to trigger WARN coverage will, in the aggregate for any 90-day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement." 20 C.F.R. § 639.5(a)(1)(ii).

Knowing what was on the horizon, the argument goes, Defendant attempted to carve out the later round of lay-offs to avoid the notice requirement. But the WARN Act is remedial legislation, Pearce v. Faurecia Exhaust Sys., Inc., 529 F. App'x 454, 456 (6th Cir. 2013), and there is authority for the proposition that creatively shaping the timing of lay-offs contravenes the purposes of the Act:

> Lastly, under Defendant's interpretation, an employer of a large number of employees, such as the Defendant, could evade the requirements of the WARN Act by always laying off over 50 employees in a 30–day period but making sure that the number of employees laid off in a 30–day period did not exceed 500. For example, a large employer could layoff 499 people every 31 days and avoid the disclosure requirement, including Section 2102(d), as long as 499 employees did not constitute 33 percent of the employees. Such result would be contrary to Congress's purpose in enacting the statute, including 2102(d), which is intended to prevent the evasion of the statute by the manipulation of the number of employees laid off.

Roquet v. Arthur Anderson LLP, 2003 WL 21251979, at * 6 (N.D. Ill. May 27, 2003); see also

9

United Mine Workers of Am. v. Martinka Coal Co., 202 F.3d 717, 723 (4th Cir. 2000) ("to avoid manipulative employment actions at a given plant, the Act provides an aggregating mechanism").

### III. REQUEST FOR CLASS CERTIFICATION

In her Motion for Class Certification, Plaintiff asks that the Court certify a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure consisting of

> All former employees of Defendant whose employment was terminated by Defendant beginning on or around June 19, 2013, and continuing until on or around September 17, 2013, who either:
> (1) received a letter from Vanderbilt substantially similar to the letter attached hereto as Exhibit 1; or
> (2) were terminated in whole or in part in response to the "significant challenges facing the health care industry" and/or the "financial challenges" referenced in the letter attached hereto as Exhibit 1, and who did not receive 60 days' advance written notice of their termination.

(Docket No. 21 at 1). Magistrate Judge Griffin recommends that the requested class be certified, that Plaintiff be designated class representative, and that Barrett Johnston, LLC be appointed class counsel. Defendant has filed no objections to the recommendation relating to class certification.

Having considered the matter, the Court will certify the class and make the designation and appointment in accordance with Magistrate Judge Griffin's stated rationale. The Court agrees that

> Plaintiff has shown that: 1) the proposed class of several hundred members is so numerous that joinder is impracticable, satisfying Rule 23(a)(1); 2) that there are questions of law under the WARN Act and questions of fact that are common to all class members, satisfying Rule 23(a)(2); 3) the class representative's claims under the WARN Act are typical of the claims of the proposed class, satisfying Rule 23(a)(3); and 4) the class representative has common interests with the unnamed class members and will vigorously represent the interests of the proposed class through qualified counsel, satisfying Rule 23(a)(4). Further, the Plaintiff has shown that the questions of law under the WARN Act and the questions of fact common to the class predominate over any questions affecting only individual members and that the class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy at issue in this action.

(Docket No. 49 at 12).

## IV. **CONCLUSION**

For the foregoing reasons, the R & R will be accepted and approved, Defendant's Motion to Dismiss Plaintiff's Amended Complaint will be denied, and Plaintiff's Motion for Class Certification will be granted, Plaintiff will be designated class representative, and Barrett Johnston will be appointed class counsel.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE